Good morning. Please be seated. I am informed that all parties to argue on this calendar are here, so I will turn to the first case on the calendar, which is Bobby Farid Hadid v. City of New York. Thank you. Good morning. May it please the Court, Nathaniel Smith for Plaintiff Mr. Hadid. In order to understand fairly the issues on appeal in this case, I think it's critical that the Court understand the actual words that were spoken by Mr. Hadid while testifying at trial, which resulted in a criminal prosecution and a conviction terminating his job, a conviction which was ultimately reversed. He was accused of perjury, and this is at page 272 of the transcript, of answering the following questions. Did you speak with Lea Grisson at the headquarters? No, I don't recall. Question. Did you interpret for any other New York City police officer who questioned her? No. This was not perjury because, as Mr. Hadid had earlier testified, he was not there to speak with anyone. He was there to act as a translator, and that's why he said, as he said in the transcript earlier when asked a similar question about whether or not Why are you arguing about this? The perjury was overturned by the appellate division, but he was convicted. So why are we going back and relitigating the perjury case, I guess, by question? It's a fair question, Judge Walker, and the reason why is because if you understand the words that were spoken and you understand the context, it is crystal clear that this was a malicious prosecution. I will move quickly through to— The jury indicted, the jury convicted. It's rare that a person can succeed on malicious prosecution under those circumstances, regardless of the fact that it's overturned on appeal. Very often the charges are dropped, and then you might have a malicious—but here there was a conviction. In the ordinary street kind of crime, I would agree with, Your Honor, but this is not the ordinary kind of street crime. The record of the crime is in the words that were spoken under oath, and that's what I'm trying to impress upon the court here, is that if you look at the words that were spoken under oath, nobody could possibly draw any reasonable conclusion or probable cause to believe that Mr. Hadid committed the crime of perjury, and that's why I'm focusing on these words. This is not a street crime where somebody made a bad judgment. The appellate court in the Second Department looked at the record and said, this is not a crime as a matter of law, and it's focusing on the crime here or the alleged crime. That's what I'm trying to do here today, and that's why I'm belaboring something which I ordinarily would not do, Judge Walker. And then the other question, the question he was convicted on, was, well—and this is at page 331 of the transcript— question, well, you indicated that the last time you had communication with her—again, referring to this woman, correct me if I'm wrong—was at or around the time she was in French custody, correct? Answer, that is correct, yes, sir, I said that. That is a misstatement, and you know it's a misstatement because on the page earlier, he was asked this question, and he gave this answer. Do you recall having any communication with the defendant's girlfriend, this same woman, between the time of the arrest and today? And Mr. Hadid said, I may have. So how can anybody rationally draw a conclusion that he's trying to deceive when on the page earlier of his transcript, he says, yes, I did have communications with her. Instead, he's tripped up during cross-examination by a fast-talking criminal defense attorney looking for an issue, and this, what I just read to you, was what he was convicted on of felony perjury. This is not—there's no evidence here. In fact, on the next page of the same questions, he's asked, did you have an email communication with her? He didn't try and run away from it. He didn't try and dodge. He said, yes, I did. This is not an intent to deceive. This crime didn't exist if you read the transcript. That is what I'm trying to impress Judge Walker on you. Well, you impressed the appellate division. And the appellate division also said, this is not a crime because there's no intent to deceive, and you haven't shown it, okay, viewing the evidence in the light most favorable to the prosecution. And they said it's not material to anything at issue. How can you get a grand jury to indict somebody for felony perjury when there's no materiality? As a matter of law, the appellate division held, and that should be raised judicata in this court today, held that there was no materiality. Didn't it detract from Mr. Hadid's value as a witness in the case if the jury thought that he was shaping the truth? There was, as the appellate division said, it's not material because there was no question about whether or not Mr. Hadid's translation from French to English was at issue. And so for that reason, nothing that he said was relevant to anything at the proceeding in the criminal case and in the Huntley hearing. The amended complaint specifically alleges that the complaining witness, who was the prosecutor, admitted that this crime, alleged crime, was not material, that these statements were not material. She said on cross-examination in the perjury trial that nothing that Mr. Hadid said was material to the Huntley hearing, which was the voluntariness. When I read the briefs, I didn't think we were going to be arguing over whether or not the conviction was appropriate or not in the state court. I thought we were going to concentrate on retaliation for various actions that were taken against him, particularly the ultimate termination, his ultimate termination. But, you know, you can argue whatever you want here. Your Honor, I have only a limited amount of time, and I was concerned that these issues about what was actually said and what was actually at issue aren't going to get in the weeds somehow. They're in the weeds if you read the briefs, and that was my concern. I will stand here and talk all day long, if I have to, about any issue that the Court has for me, any issue. No, my point is that you have 10 minutes. Yes. You've chosen to use it this way, but that's fine. Okay. It's up to you. Now, Judge Kunst made a fundamental error. He said you cannot amend the complaint. And I lay out in the brief why I believe that is a fundamental error. It departs substantially from all established practice in this circuit. And in 30 years of practicing law, I've never had a situation where I was never given an opportunity to amend. Judge Kunst was just flat wrong on that. There's no way to get around that. He was only— Even using an abuse of discretion standard, he was flat wrong? Yes. I mean, yes, I think it was abuse of discretion, because if you look at the record, and this is also a tortured part of the weeds, but we had a right to amend as of right, and that was eviscerated by the Court's rulings, okay? And that's one of our points, is that we had a Rule 15 right to amend, and that was just completely taken away without any basis at all. But even if you don't want to get into the weeds on that issue, clearly it was an abuse of discretion, and this Court has so said that it's an abuse of discretion not to allow somebody to amend when the amendment will cure any defects in the pleading. That's plain. Judge Kunst also erred by saying, I don't need to even look at the allegations in the amended complaint, including new legal theories, like Section 1981, which weren't even asserted in the original complaint. I don't need to look at those allegations because I made a prior ruling, and that's collateral estoppel, and you're out. That is a complete reversal of well-established law, which requires that the Court look at the amended pleading and see whether or not it states a claim for relief. Doesn't the amended pleading include two other defendants who don't have immunity issues? Two. There was two prosecutors, Hurley and Gurria, were involved in the investigative stages of this case. They were not in the courtroom. They did not act as advocates. They did not present the case to the jury. They did a massive investigation, and they covered up the truth. The reason why this perjury case actually got as far as it got was because they manufactured this story about a relationship. They did a massive investigation, as we only found out later, finding that their e-mails, phone records, conferrals with Homeland Security, with Joint Terrorism Task Force, conferrals with the Intelligence Division, they had a massive record. The file is this big, showing no relationship at all, and yet they stood in front of Judge Maris in New York, King's County Supreme, and said there was a personal relationship. They knew that was false. A prosecutor— That's not—there was a personal relationship. It may not have been a romantic relationship, but they met in Paris, they exchanged e-mails, and isn't that a peculiar thing to do with someone who's thought to be an accomplice of a murderer? She was not—that's another falsehood. She was not an accomplice of a murderer. That's a complete falsehood. But no, it's not a relationship. Judge Crawford, I don't know you, but if I called up your chambers and you returned a call to me, that doesn't constitute a personal relationship. This woman gave up— What about exchanging cards, exchanging birthday and Christmas cards? No, what was that? All the detectives gave her their business cards. She reached out to the detective who spoke— I understood it wasn't a business card. I understood from the materials that it was a birthday card. It was a greeting card. I respectfully, Your Honor, that's incorrect. What happened was all the detectives in Paris gave her their business cards. She felt terrible about giving up her common-law husband, boyfriend, whatever, and she reached out to one of those detectives, Sergeant Hadid, and he agreed to meet her. He didn't have a relationship. She reached out to him, and he responded. She called him. He picked up the phone. She asked to meet. He said he would meet. She sent him an e-mail, thank you very much for meeting with me, and he responded saying, you're welcome, happy new year. We're not questioning whether or not he acted appropriately or not. That's not the issue. The issue is what he said about it later on or didn't say. Right, and if you look at the actual statements, what he said is, yes, I did send an e-mail. He didn't lie about that. So how do you— About meeting her. He never ever was asked or denied meeting her. That is a fabrication. It continues to be a fabrication to this day if you read the briefs by the appellees, a fabrication. Thank you. You've reserved three minutes for rebuttal. We'll hear from the government. Good morning, Your Honors. May it please the Court. We've laid out in our brief in great detail why the dismissal of almost all the claims was appropriate, why it didn't state a claim, and why summary judgment was appropriate on the First Amendment retaliation claim. And I can go through and summarize that again quickly for the Court, but I did want to respond to one or two points that my adversary made. In the question that he says that it's a lie that she was, Ms. Grisson, was an accomplice, Mr. Hadid took her confession when he was in Paris in which she admitted that she helped her boyfriend dispose of a dead body. The body of the victim that he had just, when he was later convicted of manslaughter for killing. Wrapped him in paper and plastic, in trash bags, drove around, put him in a dumpster, put clothes in a dumpster, and then left for Paris the next day or two. So Mr. Hadid was aware of all that information at the time that he's then having all these subsequent contacts with Ms. Grisson. But to return to the merits of his actual claims, Judge Walker, as I think you were getting at, if you look at the malicious prosecution claim, there is a presumption of probable cause that arises out of both the indictment and the initial conviction that under well-settled law that we lay out in our brief is not vacated when the underlying conviction is later vacated. And they have not- That's counterintuitive, counsel. When the conviction is vacated, all the underpinnings of that conviction should disappear with the vacation of the conviction. Not so, Your Honor. What I would point out is that- The point is that I think that failure to convict beyond a reasonable doubt is different from probable cause. Correct. You could achieve probable cause. They're consistent because probable cause to indict, probable cause to try the person and the conviction can be overturned, but the standard on the government is different. Correct. Otherwise, any time there was an acquittal at trial, then the presumption would drop out. And also in this case, I think that, I'm sorry, is somewhat misstating the Second Department, the Appellate Division's decision. They said that they hadn't met the burden of proving two of the elements of perjury, intentionality and materiality, beyond a reasonable doubt. And that goes back to your observation, Judge Walker, that it's a far different standard than probable cause. Counsel, why wasn't it an abuse of discretion not to allow amendment of the complaint? Because, well, first of all, I mean, that is the correct standard here because we were beyond the 21 days. Even when you have discretion, you can make a mistake. Of course, Your Honor. It wasn't an error in this case because they waited until two days before their deadline to seek an amendment, to seek an extension, at which point the motion to dismiss had already been briefed. They had filed their opposition. That's a traditional time, I think, when people file their opposition to the motion to dismiss, and they say, alternatively, we would like to amend our complaint on the following basis. So they didn't show a good cause for amending that's required when you're trying to do it under a scheduling order. What I've heard here and what I've read in the papers is that they had alternative theories and new defendants. So what good cause did you, what more do you want? I mean, it wasn't futile, they're arguing. Well, I can turn to futility because that was the alternate basis for Judge Coons' decision, and we address it in our brief as well. Let's go through it. I'm not clear on the timing part. So there was a motion to dismiss, and then the plaintiff sought leave to amend, sought an extension, and there were two days left in the period within which he had to move to amend. And was it on the basis of the motion that had been filed? Had the motion been responded to? Had the motion to dismiss been responded to? Yes, it had, Your Honor. About, I think, ten days before the motion, before the request to extend the deadline was made. I see. But he was, he hadn't exceeded the deadline. He had not exceeded the deadline, but the magistrate judge denied his request to extend the deadline because it would moot the fully brief motion at that point. Well, reply brief hadn't submitted yet, but the main brief . . . Is he entitled to one amendment as applied? He is within 21 days of when the motion is filed under Rule 15. After that, it's subject to a scheduling order, which is why this would be an abusive discretion standard. But I do, I'm not trying to not address the futility argument, I think, because we address it deeply in our brief, and I think . . . But before we go there, there's a little more to the story, right? Because there was an extension for an additional two weeks in August, correct? No. Which was not observed. The motion to amend came in much, much later, two months after the judge's ruling. That's correct. I think the magistrate judge, what the magistrate judge said at the hearing was that if Judge Koons granted, in deciding the motion to dismiss, if he gives you leave to amend, I will give you fourteen days from the date of that. And was that followed or no? I don't believe so, no. But I'm not, I can't swear to that stuff if it's possible that it was, that the motion was made at that time. But Judge Koons didn't give him leave to amend. As I tried to untangle the record, it was made two months, not sixty days, not fourteen days. I believe that's correct, Your Honor. But to speak to futility, there's still nothing in the potential, in the amended complaint, that changes the analysis of why the claims failed to state a claim, even if you were to accept it. I mean, the crux of it is that they failed to disclose that their investigation did not substantiate a romantic relationship. But that one, I mean, that's not exculpatory information to start with. Didn't they, didn't the prosecutor in the first trial say there was a relationship? Didn't she say that point blank? The prosecutor did not, on her direct examination during the perjury trial, no. None of that came up. On cross-examination, she was asked a question about, like, so you don't know anything other than this one contact in Paris. And she responded by saying, well, actually, I'm aware of other contacts, because she learned that information during the recess in the trial that was called after the question about translating the email. She testified that she was told that by the murder defendant's defense counsel during the trial, and that he had other documents and he told her he had other things. And she also testified that she observed the defense counsel arguing with the murder defendant, because the murder defendant didn't want other things coming out about the contacts between Mr. Hadid and Layla Grisson. But it turns out that there was no relationship between Mr. Hadid and Ms. Grisson. Isn't that true? It turns out they weren't. Isn't that what the investigation proved? The investigation was unable to substantiate any further contacts other than past the exchange of the best wishes. So why do you hesitate to agree when I say it proved there was no relationship? This has been this case all along from the very beginning. I would say it doesn't substantiate it. They failed to substantiate it, but they didn't proceed on that theory. If you look at the opening statement in the perjury trial, they talk about that he did not disclose. There was the meeting in Paris. There were two phone calls and three to four emails going back and forth. So six to eight emails. And that was the basis. And the trial, it actually was a bench trial, Your Honor. And the judge in reaching his decision and talking about sentencing didn't mention that, you know, there was an issue as to whether he concealed the relationship and what the relationship was. But he didn't base it on a question of whether there was a romantic relationship versus a different relationship. Did these contacts, did they affect the outcome of the trial? Was the murderer convicted? He was convicted of, he was tried for, I believe, second degree homicide and manslaughter. He was convicted of the lesser, including offense. He was convicted of manslaughter. So it's hard to me, it's hard to me, you know, I'm familiar with criminal records. I've been doing this job a while. Why would they, why would they charge him with perjury? Why would they, unless they were just interested in somehow trimming his sails? I think because there was a sense of that this is. It wasn't dramatic. It wasn't cataclysmic perjury, was it? I mean, it didn't affect the outcome of anything very much? One could certainly take that position. I think that's definitely. Well, I've taken that position. I understand, Your Honor. And I'd like you to respond. Well, I think, my point is saying one could say, yes, you should not have brought this case. But legally, it does not affect any of the causes of action. Because the decision whether to prosecute or not is at the absolute core of prosecutorial immunity. Believe me, I understand that. I understand that. They brought this case. However, then, they were embarrassed. Let me not attribute that to them. They should have been embarrassed by the decision in the second department, which said there's no evidence here for the case that you brought. Isn't that humiliating for a prosecutor? I think prosecutors have cases overturned on appeal when a court says you didn't meet your burden of proving it beyond a reasonable doubt. I mean, again, a judge in Kings County felt that they had proven it beyond a reasonable doubt. So I don't know if it's humiliating or not, Your Honor. I think it's part of the job that sometimes you get overturned. When I get reversed, I always thought it was humiliating. But that's just me. I don't like this navigate when I lose a case. So they brought this case, and then it was overturned. And we're here now finding out whether anything remains of Mr. Hadid's lawsuit that will allow him to proceed and maybe get his job back. Is that where we are? Is that the appropriate procedural process? I mean, he has a number of civil rights 1983 claims, and he also has a claim that part of his retaliation against him that he claims is that he was denied reinstatement. He loses his job automatically upon a felony. But the prosecution was supposed to be in retaliation for something. Yes, he claims that the prosecution was. How long after the acts that he claims he was retaliated against for was the prosecution? The prosecution itself, let's see. You want to go from the date of the indictment? Well, yeah. Okay. The indictment, I believe, was in April of 2012. And I think most, I mean, he argues that it's all sort of a. . . I know what he's arguing. Just tell me what the acts were that he says he was retaliated for prior to that. I think the discrete acts he's talking about are complaints that he allegedly raised in 2009 and 2010. Right. Tell me why malicious prosecution doesn't survive as a cause of action going forward. Because there's a presumption of probable cause. Is there a presumption of probable cause? There is, Your Honor. Yes, there is. But this is now, just changing our focus, this is now 12b-6. It is. Right? But the. . . And is there a presumption of probable cause on a 12b-6? When the indictment's clear, when you know there's been an indictment that's not in dispute, that's pled in the complaint, yes, you have to allege facts that would be sufficient to overcome the presumption. And he didn't do that in this case. You just have to allege facts that, if believed, would allow the cause of action to be tried. Non-conclusory factual allegations. Right. I agree with you. We both know the standard. And he says I was prosecuted maliciously because of my history with the department, whatever. They brought this perjury action that was overturned, which seems to him proof that it shouldn't have been brought in the first place. And aren't those facts sufficient to go forward on malicious prosecution? No, because it can't. The decision whether to prosecute or not, whether to initiate the prosecution and go forward, that's all covered by prosecutorial immunity. All right. Well, we'll see. I'll ask opposing counsel. Thank you. The presumption of probable cause can be rebutted. There's many cases that talk about that. The most recent is the Torres case by the New York Court of Appeals. The presumption may be overcome by evidence establishing that the police witnesses have not made a complete and full statement of facts, or they have misrepresented or falsified evidence, or they have withheld evidence, or they have otherwise acted in bad faith. That's Torres, New York Court of Appeals, 2016. That would be much more powerful if the jury had acquitted, because that would indicate that the prosecution and the prosecution's witnesses had tainted the grand jury, which is not subject to cross-examination, not an open proceeding, not a trial, a full trial. But the situation, do you have a case where the presumption was rebutted after a trial in which the plaintiff was convicted? I don't have a case that's directly on point. I don't think that there's any case that I'm aware of, helping or bad, that's really on all fours. Otherwise, I think somebody would be shumming it at you.  But I do know that the law allows the presumption of probable cause, if it applies to the 12B6 stage, to be rebutted when there's evidence of fabrication. Here, they made up this whole story. The record is replete with them making up a story that he had a romantic relationship, that he traveled to France with her, that she was a suspect, that he gave her Miranda rights. They manufactured all this. Wasn't all of this available to be shown at the trial? If it wasn't actually shown, it was available to be shown at the trial. And wasn't there cross-examination on all of this? Wasn't this part of the mix that the jury had before it? The prosecutors had this stack of evidence from e-mail servers, from phone records, loads and tolls, travel records, conferrals with all of these third parties. And the prosecutor also, during cross-examination, denied that there was any investigation at all. So even if it might have been available, this was flatly inconsistent with what she was saying. She said there was no investigation. I have a stack in my office of this high of an investigation. She said there was a romantic relationship, and here's a stack of information that says there was no relationship. When did you come to this file, and at what stage of the proceedings? On December 2, two days after Judge Kunst granted the initial motion to dismiss, I was handed that file in the context of a reinstatement hearing in front of one police plaza. And it had all of IAB's conferrals with Homeland Security, with Joint Terrorism Task Force, loads and tolls. It had his travel records. It had her travel records. They got phone records. They got everybody who visited the criminal defendant when he was locked up in state court. They had this entire file showing no connection at all. That was never disclosed during the perjury trial? Never. Flat out at the heart of the case. And if you read the record, they said in their opening statement that he lied about his relationship in the perjury case. The prosecutor said he was lying about his relationship with Brisson. Carvajal testified that this is all we know about the least salacious email. She said it was a romantic relationship. In closing arguments, they argued to Judge Maris, who was the trier of fact, that, well, of course she was upset. Who wouldn't have been upset if they had been confronted with the fact that this witness had this ex-girlfriend who was this person? This is all just manufactured, and the prosecutors had it in their file. And this prosecutor, Gurria, who we tried to amend, he was sitting in the courtroom when these lies were being perpetrated on the justice system. I want to just address one thing, if I might. We did the amendment request. There's a misstatement going on in the record. What happened was I had made a request, and this is not in the record on appendix, but it is in the record below. Document number 19. On the day that Judge Reyes issued his scheduling order, that day I had a conference with him, and this is on page 29 and 30 of the transcript, which is in the record of the district court. I said, Judge, I want to be able to amend as of right, and I want to have the benefit not just of their motion to dismiss, but also their reply papers. And Judge Reyes said, okay, I'll look at it, and I'll see what I can do. Then he issued the scheduling order, which said that no amendment to the pleading shall be permitted after 8-15-15. So two days before that date, on 8-13, I happened to be in Judge Reyes's courtroom on this case, and I said, Judge, there was a delay in briefing the motion to dismiss. I'd like to have the benefit of the fully briefed motion. And Judge Reyes reversed himself and said, no, they're submitting this motion. If you were to file an amendment right now, it would move the motion, so I'm telling you, don't do it. So I didn't do it, because I was told by a magistrate judge not to, not because of some sort of litigation tactic on my part. I was told flat out, and that's in the record on page 88, don't do it. It'll move the motion. What happened then is that Judge Kuntz issued an order granting most of the motion to dismiss on November 30th. On December 3rd, I was in, you think I have nothing better to do. I was in Judge Kuntz's courtroom arguing about why this reinstatement hearing shouldn't go forward, and we discussed the judge's recent decision. And I told Judge Kuntz, Your Honor, I had a right to amend, and I want to be able to exercise that right to amend. And I pointed out in my papers in opposition to the motion that I wanted to amend. He said, you're out of luck. He said, no, you're out of time. Your time to amend as of right has passed, which frankly I think is incorrect. And I'll consider if you make an application for an amendment, but I'm not likely to grant it. Within two weeks of that date, I filed a formal notice of motion to amend the complaint, which was denied because we waived our right to amend as of right, that the judge had already decided these issues, and so he didn't need to do a futility analysis. And he did not address any of the rather alarming facts that I've tried to impress upon the court about how these prosecutors and the IAB officers who were in the courtroom knew that this was a bogus statement, totally bogus statement about a romantic relationship, and they allowed a miscarriage of justice to go forward, seeking to profit from it. And fortunately, the Second Department said, this is not a crime. Thank you. Thank you both. A very lively argument.